703 So.2d 566 (1997)
Floyd GRAVES, et al.
v.
Leslie Leon PAGE, et al.
No. 96-C-2201.
Supreme Court of Louisiana.
November 7, 1997.
Rehearing Denied December 12, 1997.
*567 Richard P. Ieyoub, Atty. Gen., Jack O. Brittain, Natchitoches, for Applicants.
Edward P. Chevallier, Jr., Burkett & Chevallier, Many, William P. Crews, Jr., Natchitoches, for Respondents.
JOHNSON, Justice.

PROCEDURAL HISTORY
Plaintiff, Floyd Graves, filed this suit for damages as a result of vehicular collision which occurred on September 7, 1991. Defendant, Leon Page, failed to answer the Petition and was preliminarily defaulted at the beginning of the trial The Natchitoches Parish Sheriff's Office entered into a settlement with the Plaintiff prior to the trial A judgment was rendered against the State of Louisiana through the Department of Transportation (hereinafter referred to as DOTD) in the full sum of ONE MILLION THREE HUNDRED NINETEEN THOUSAND ONE HUNDRED SIXTY-ONE AND 33/100 DOLLARS ($1,319.161.33) together with legal interest from date of judicial demand until paid. Liability was assessed at 0% to the plaintiff, 90% to Leslie Leon Page, and 10% to DOTD. According to a pre-trial stipulation entered into by the parties, DOTD was assigned liability for one-half of the Judgment award, the sum of SIX HUNDRED FIFTY-NINE THOUSAND FIVE HUNDRED EIGHTY AND 66/100 DOLLARS ($659.580.66). The trial court found liability on the part of DOTD because vegetation growing within the highway right of way obscured Graves' view of oncoming traffic and Court of Appeal affirmed the decision of the trial court. The Court of Appeal applied duty/risk analysis and found the DOTD failed to safely maintain the shoulder of the Howard Hall curve, that the failure was a cause-in-fact of the accident and as a result, DOTD is strictly liable to Graves. In this case, we are called upon to determine whether the *568 duty imposed upon the State to maintain the roadway and shoulders of the highway includes the duty to keep the highway right of way clear of vegetation that creates sight obstructions. For the reasons assigned herein, we reverse the ruling of the lower courts.

FACTS
At approximately 5:50 p.m., on September 7, 1991, plaintiff Graves was driving his 1989 Ford pickup truck north on Louisiana Highway 117. A light rain was falling. At the same time, two Natchitoches officers were pursuing the defendant, Page, south on Louisiana Highway 117. Narcotics detective Dunn was approximately one to two car lengths behind Page and Civil Defense Deputy, Shelby Borders, was about the same distance behind detective Dunn. Both officers had activated their sirens and emergency flashing lights to attract Page's attention before turning onto Louisiana highway 117. Page ignored the lights and sirens throughout the pursuit. As the three cars approached the Howard Hall curve where the accident took place, Detective Dunn estimated Page's speed at 65 to 70 mph. The curve had a posted advisory speed of 35 miles per hour. Both officers testified that Page's vehicle was swerving back and forth on the highway and that moments before the accident, Page almost hit a bridge railing. Detective Dunn testified that as they approached the curve, he "backed off" allowing the distance between his vehicle and Page's to widen to three to four car lengths. He stated that as Page entered the curve, his vehicle's right wheels, both front and rear, drifted off the surface of the road and onto the shoulder. Detective Dunn recounted that as Page attempted to regain the road's surface, he apparently over corrected and lost control of the vehicle. Page's vehicle started to travel toward the northbound shoulder of the highway and at the same time began a counterclockwise spinning motion. According to Detective Dunn, he observed the collision between the Page and Graves vehicles seconds later. Detective Dunn stated that the impact took place in Grave's line of travel, but the momentum of the impact carried both vehicles onto and across the northbound lane.
After the accident, it was determined that Page had a blood alcohol level of 0.29%, almost three times the level at which one is presumed intoxicated under La. R.S. 14:98. Detective Dunn testified that when he first observed Graves' vehicle it was proceeding north in its proper lane of travel. He stated that Page had already lost control of his vehicle at that time and that the impact between the two vehicles occurred almost immediately thereafter. Detective Dunn felt that the accident was caused by Page's drunkenness, his excessive speed and the slippery condition of the road.
Graves testified that he first heard the siren as he approached the three curves in Louisiana 117. He had already started to brake for the curves slowing down to about 40 miles per hour. He took no further action to adjust his speed. When he heard sirens, he attempted to locate the source. Since he saw nothing coming towards him due to the brush growing inside the curve, Graves looked in his rear view mirror. He saw nothing. When he returned his vision to the front, he immediately saw a brown vehicle, 70 to 80 feet away, coming directly towards him. The vehicle was still in its lane of travel, but was pointed towards him as it spun out of control. When he saw the vehicle coming towards him, Graves jerked his truck to the right, however, the impact occurred in his lane of travel. Graves testified from the time he saw Page's vehicle until the point of impact, 1 to 1.5 seconds elapsed. He further stated that had the brush been cleared inside the curve, he would have had a better view of the highway ahead of him and would have seen Page's vehicle sooner.
Trooper Stephen Rachal, Louisiana State Police, was one of two investigating officers, but the only one to testify as to what occurred at the accident scene. Rachal stated that the tire marks on the shoulder of the southbound lane indicated that just prior to the accident, approximately one-half of Page's vehicle left the roadway, traveled for a short distance on the shoulder and then came back onto the road and went across the northbound lane where the collision occurred.
*569 Rachal also testified that Graves' vehicle traveled about 25 feet after it was struck by Page's vehicle. The truck continued its northward direction of travel but due to the force of the collision and Graves' attempted evasive action, it veered to its right, penetrated some brush and small trees and came to rest against the bottom of the embankment on the right hand side of the northbound lane of travel. Rachal indicated that he could find no skid marks at the scene. He stated that the estimated 65-70 miles per hour listed in his report as the speed of Page's vehicle at impact was based upon the figures provided by the pursuing officers.
Gene Moody testified for the Plaintiff. The trial court accepted him as an expert in motor vehicle accident reconstruction, safety engineering, road design construction and maintenance. In reconstructing the accident, Moody stated that Page's intoxication caused him to run off the main highway onto the shoulder of the road, after which he over corrected by steering sharply to the left and lost control of his vehicle. Page's vehicle began to yaw, moving forward and sideways at the same time, across the road at a sharp angle and impacted with Graves' truck in the northbound lane of travel. The impact stopped Page's vehicle and knocked it backwards fifteen feet, while Graves' truck continued northward for another twenty-five feet, coming to rest against two pine trees located in the ditch and on the slope of the embankment. In calculating the speed of the two vehicles, Moody stated that Page was traveling 60 miles per hour when he entered the curve and then fifty-five miles per hour when he yawed into the curve. Therefore, Graves was traveling at 47.5 miles per hour. Moody concluded that the speed limit at this point should have been 40 mph instead of 35 mph because this stretch of roadway had been paved in 1990 and 1991. Moody determined that Graves had no time to take evasive actions prior to the collision. The normal amount of time for perception and reaction is about one (1) second. Moody allowed Graves another .5 second because he looked in his rear view mirror to find the source of the siren. Based on the testimony, Moody was unable to determine what Graves' perception and reaction time was, but concluded there was insufficient time for him to perceive and react and then try to avoid the collision.
Moody testified that had the vegetation in the ditch been cut back, Graves would have seen Page's approaching vehicle earlier and had a better chance to avoid the accident. He stated that Graves' decision and stopping sight distances were reduced by 15 to 20 feet due to the brush and pine trees growing inside the curve. According to Moody, DOTD violated the clear zone rule for maintenance. In this case, the clear zone should have been 12-14 feet. A clear zone is an area for drivers to run off the road and have a chance to recover without hitting any obstacles. The vegetation in this curve grew an average of six feet from the edge of the road's surface.
Dr. Joseph Blaschke was the DOTD expert. He was accepted by the trial court as an expert in traffic engineering, highway design and accident reconstruction. He testified that DOTD's failure to cut the vegetation inside the curve did not render the curve unreasonably dangerous, nor did it contribute to the cause of this accident. Instead, the accident was caused by the intoxicated driver, Page, traveling the curve at a high rate of speed and failing to maintain control of his vehicle such that it crossed the center line and struck Graves' truck.
Blaschke opined that Graves' failure to look ahead may have contributed slightly to the accident. Page's sight distance was 2.1 to 2.2 seconds. If Graves first heard the siren five seconds before impact and saw Page's vehicle 1 to 1.5 seconds before impact, then for 3 to 3.5 seconds he was looking in his rear view mirror trying to locate the source of the siren. Blaschke testified that even if Graves had been looking ahead, he could not have avoided the accident since he would have had only an extra .5 second to slow down. This extra time would not have made a difference in the outcome of the accident.
Blaschke further testified that the stopping sight distance on Louisiana Highway 117, which has a 4% grade is 250 to 275 feet and that the real problem with the Howard *570 Hall curve is the embankment and not the vegetation. There is no federal mandate requiring DOTD to cut back the embankment or realign the curve. Instead each state has its own policy and procedures which basically requires the state to maintain a roadway in a reasonably safe condition.

LEGAL ANALYSIS
We must decide in this case whether the State through the DOTD has any liability to the plaintiff under a theory of strict liability or negligence.

Strict Liability
In the case of strict liability, there must be a causal relationship between the defendant's wrongful conduct and the plaintiff's injury. The plaintiff must show that the defendant's actions were a "cause-in-fact" of his injury. The Louisiana Courts have applied the "substantial factor" test in those cases where a single accident may have several causes-in-fact. "The defendant's conduct was a cause-in-fact of the harm if it was a `substantial factor' in bringing about the harm. The substantial factor test works well where there are multiple causes-in-fact, but the trier of fact may not be able to conclude that the accident would more probably than not have happened `but for' any one of the causes." Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law, § 4-3 at 86-88 (1996).
There can be more than one legally responsible party in any accident. In this case, there were several parties and several causes-in-fact. In the landmark case, Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298, 302 (1962), this court enunciated certain principles that we still use to analyze accidents with multiple causes. In that case, the court concluded that "negligent conduct is a cause-in-fact to another if it was a `substantial factor' in bringing about that harm. The negligent conduct is undoubtedly a `substantial factor' in bringing about the collision if the collision would not have occurred without it." Id. at 302.
The substantial factor test was also applied in LeJeune v. Allstate Ins. Co., 365 So.2d 471, 475 (La.1978). In that case the court stated that "one must consider whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm." Id.at 475.
Trahan v. State, Department of Transportation & Development, 536 So.2d 1269 (La. 3rd Cir.1988) is the progeny of Dixie Drive It Yourself System, 242 La. 471, 137 So.2d 298. The court relied on Trahan, 536 So.2d at 1269 and LeJeune, 365 So.2d at 471 in its analysis of substantial factor. "If two causes occur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result, some other test is needed. In such cases, it is quite clear that each cause has in fact played so important a role in producing the result that responsibility should be imposed upon it; and it is equally clear that neither can be absolved from that responsibility upon the ground that the identical harm would have occurred without it, or there would be no liability at all." Trahan, 536 So.2d at 1272.
Strict liability implies that neither the defendant nor a third party has been negligent or has committed an intentional tort, but the defendant is liable because he bears a certain relationship to the injury-causing instrumentality. Since Loescher v. Parr, 324 So.2d 441 (La.1975), our courts have held the defendant liable if he or she bore a legally significant relationship to a thing, building, person, animal or product that presented an unreasonable risk of harm.[1]
La. C.C. Art. 2317 provides:

Acts of others and of things in custody.... We are responsible, not only for the damage occasioned by our own act, but *571 for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
The State's liability is limited under Art. 2317 because of LA. R.S. 9:2800 which provides:
Limitation of liability for public bodies.
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence and the public entity has a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
E. "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials and employees of such political subdivisions. Added by Acts 1985, No. 454 Sect 1 eff. July 12, 1985."[2]
Because of the limits in La. R.S. 9:2800, the duty owed by the DOTD under either strict liability or negligence theories is the same. See Campbell v. Louisiana Department of Transportation and Development, 94-C-1052 (La. 1/17/95); 648 So.2d 898 Hunter v. DOTD, 620 So.2d 1149, 1150-51 (La.1993);[3] The plaintiff must prove custody, defect and causation and DOTD must have knowledge of the hazardous condition. Absent notice, DOTD cannot be found liable under a strict liability or negligence standard. See Campbell, 648 So.2d at 901.

Negligence
The standards of negligence are clear. To establish a breach of the Department of Transportation's duty, the following requirements must be satisfied:
(1) The thing which caused the damage must be in the care or custody of the defendant;
(2) a hazardous condition existed;
(3) DOTD must have actual or constructive knowledge of said condition and;
(4) DOTD must fail to take corrective action within a reasonable period of time.
See Loescher v. Parr, 324 So.2d at 441, 446-47, Lewis v. State, Through Dept. of Transportation and Development, 94-C-2370 (La.4/21/95); 654 So.2d 311, 313; See also Godwin v. Government Employees Insurance Co., 394 So.2d 751, 754 (La.App. 3rd Cir.1981).

ShouldersClear Zone Discussion
The DOTD has a duty to motorists on Louisiana highways. This duty is clearly established under case law. The DOTD owes a duty to travelers to keep the highways and their shoulders in a reasonably safe condition. Hunter, 620 So.2d at 1150-51. In addition, DOTD has a statutory duty to regulate the use of public highways. LA. R.S. 48:21(A)[4] However, "the Department of *572 Highways is not responsible for every accident which occurs on state highways. It is not the guarantor of the safety of travelers thereon or an insurer against all injury or damage which may result from defects in the highway. The duty of the Department of Transportation is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence." See Godwin, 394 So.2d at 754 and Lewis, 654 So.2d at 313; Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3rd Cir.1974).
There are cases which clearly establish DOTD' s duty regarding the shoulder of Louisiana highways. See Lewis 654 So.2d at 311. "The duty to motorists encompasses the foreseeable risk that, for any number of reasons including simple inadvertence, a motorist might find himself traveling on, or partially on the shoulder. A motorist has the right to assume that a highway shoulder, the function of which is to accommodate motor vehicles in emergencies and for other reasons whether intentionally or unintentionally driven thereon is maintained in a reasonably safe condition." Begnaud v. Department of Transportation and Development, et. al., 93-CA-639, 93 CA640 (La.App. 5th Cir. 1/12/94); 631 So.2d 467, 470. Sinitiere v. Lavergne v. State of Louisiana, Through the Department of Transportation and Development, 391 So.2d 821 (La.1980) There are many cases that answer the inquiry whether or not, as a factual matter, the absence of a shoulder or the presence of an inadequate shoulder creates an unreasonable risk of harm. See Myers v. State Farm Mutual Auto. Ins. Co., 493 So.2d 1170 (La.1986) and Stone, Louisiana Civil Law Treatise, Tort Doctrine, at § 388 (1977).
The highway and shoulder in question are clearly within the control and custody of the DOTD. The plaintiff's expert, Moody measured the shoulder and determined that there was a shoulder clearance of four to six feet along this stretch of roadway. Therefore, there was clearly enough room for the plaintiff to move to the shoulder.
Duty/risk analysis requires that the defendant have a duty to protect this plaintiff against this particular risk. Defendant argues that, in this case, the shrubbery on the side of the road was not the cause-in-fact of the accident. Instead, excessive speed and an impaired driver were the cause-in-fact of plaintiff's injuries. We agree.
Act 95 of 1921 incorporated LA 117 into the State highway system. It begins from a junction with LA 8 at or near Leesville and ends in a junction with LA 6 at or near Hagewood. This two-lane asphalt surfaced roadway with graveled shoulders has been maintained by the State as part of the State system of roads since that time.
The cases involving foliage are determined on a factual case-by-case basis. In Holt v. Rapides Parish Police Jury, 574 So.2d 525 (La.App. 3rd Cir.1991), the appellate court found that Plaintiff was not entitled to recover because the foliage was not a cause-in-fact of the accident. In the Holt case, the roadway was 18-20 feet wide, the foliage had not grown onto the roadway and both vehicles were occupying the center of the roadway. The court found that the cause of the accident was both drivers' equal failure to keep their respective vehicles in their respective lane of travel while negotiating a blind curve. The court held that the overgrowth of foliage was not the cause-in-fact of the accident." The record shows that both vehicles were traveling in the center of the roadway into the 90 degree curve although there was ample space for the vehicles to pass in their respective lanes of travel. The tall foliage did not prevent the respective vehicles from keeping their respective vehicles in the proper lane of travel while driving through an otherwise blind curve."
In Johnson v. American Southern Ins. Co., 569 So.2d 1071 (La.App. 3rd Cir.1990), the court held that the presence of overhanging brush did not establish the lack of maintenance of the road as the causation of the accident or as a substantial factor in bringing about its occurrence. In Johnson, the plaintiff argued that "but for" the brush hanging onto the road, the accident would never have happened. The court held that the cause-infact *573 of the accident was the defendant's negligent operation of the vehicle. The court could not ascertain why the defendant's vehicle was in the plaintiff's lane of traffic. Thus, no assumption can be made with regards to differing road conditions and the avoidance of the accident.
In Miller v. State, DOTD, 95-548 (La.App. 3rd Cir. 3/20/96); 679 So.2d 134, 138, Reh'g Den., the court discussed unreasonable risk of harm. "The unreasonable risk of harm cannot be inferred from the fact that an accident occurred." The court found that the cause of the accident was the individual's negligence in failing to act as a reasonable and prudent person in the operation of his vehicle, not DOTD's failure to remove a tree. "An individual driver owes a duty to operate his vehicle in a prudent manner, which includes the duty to maintain control of it and to remain within his lane of travel."
In determining the reasonableness of a risk, the Court must consider the broad range of social, economic and moral factors and the social utility of the plaintiff's conduct at the time of the accident. See Oster v. Department of Transportation and Development, State of Louisiana et. al., 582 So.2d 1285 (La.1991). One cannot be protected from all risks. This Court must decide which risks are unreasonable. "The Court must carefully consider all the circumstances surrounding the particular accident to determine whether allowing recovery to the particular plaintiff involved, for damages occurring in the particular manner in which the plaintiff was injured, is desirable from the standpoint of justice and the social utility of the conduct of the respective parties." See Oster, 582 So.2d at 1288. Oster involved a drainage ditch. This court found that a drainage ditch served to keep water from draining onto the travel portion of the Highway and causing a dangerous situation for motorists. Because drainage ditches help make travel along the roads of this state safer, their utility is great. In Oster, this court concluded that in determining whether a condition existing on property presents an unreasonable risk of harm, we must look at all circumstances.

MANIFEST ERROR
In order to overturn the decision of the trial court, its finding must be manifestly erroneous or clearly wrong. See Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). The reviewing court must review the record in its entirety to determine whether the court's finding was clearly wrong or manifestly erroneous. Id. at 882. This court has announced a two-part test for the reversal of the factfinder's determinations. In Mart v. Hill, 505 So.2d 1120 (La.1987), this court stated the two-tier test for reversal on appellate review:
(1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
(2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
We find manifest error.
The critical inquiry in this case is the propriety of the trial court's causation determination. Causation is a fact-specific inquiry. Rick v. State, Department of Transportation and Development, 93-C-1776, 93-C-1784 (La.1/14/94); 630 So.2d 1271, Reh'g Den. The issue to be resolved is whether the factfinder's conclusion is a reasonable one. Although deference to the factfinder should be accorded, the appellate courts nonetheless have a constitutional duty to review facts. Ambrose v. New Orleans Police Ambulance Service, 93-C-3099, 93-C-3110 and 93-C-3112 (La 7/5/94); 639 So.2d 216, Reh'g Den. See also Const. Art. 5 § § 10(B) and 5(C).
The trial court found that the primary legal and factual issue in this litigation was the sight obstruction caused by the trees and brush growing in the ditch on the east side of LA. 117. The trial court also concluded that the roadway had no design defects and the State was under no obligation to realign this highway. In its Reasons for Judgment, the trial court stated that the road ditch was defective in that the existence of trees and brush created an unreasonable risk of harm to others by substantially limiting *574 view at this dangerous hilly curve. It equated the denial of the opportunity to avoid this accident to causation.
The trial court found DOTD liable, because it reasoned, the sight restrictions in the Howard Hall Curve resulted in the loss of opportunity to avoid the accident. But our concern must be with the location of the vegetation that resulted in the sight restrictions. Stated another way, did this vegetation pose an unreasonable risk of harm under the circumstances? All witnesses concede that the pine trees and vegetation were in the ditch and ditch bank of the highway right of waynot on the shoulder. The plaintiff's expert, Moody, suggested that we should impose a duty on the State to regularly cut this undergrowth from the ditch and bank within the curve in order to improve the motorist's sight distance. This would place an unreasonable burden on the state, and we hold that the State is not liable to a motorist when a failure to trim vegetation in the ditches along the right of way results in sight restrictions. DOTD's duty to maintain the roadway and shoulders does not encompass the risk that an accident such as this one will occur. For the reasons stated above, we find that the vegetation, trees and brush in the ditch along the highway right of way did not present an unreasonable risk of harm under the facts of this case.
In the present case, this motorist was hit as a result of a high speed chase of a drunken driver. DOTD was in no way involved with this chase. By his own testimony the motorist stated that he was looking in the rear view mirror within .05 seconds of the accident. When he turned to the front, the car was upon him and the accident occurred almost instantaneously. Plaintiff was also traveling at more than the posted speed limit. Even under a comparative fault analysis, DOTD was not at fault. The vegetation did not pose an unreasonable risk of harm nor was it a substantial factor without which this accident would not have happened. Thus, this particular risk does not fall within the ambit of DOTD's legal duty. It is unreasonable to impose a rule of law that would require DOTD to maintain every tree and shrubbery within its control or face the prospect of tort liability. The duty to maintain the roadway and shoulder does not encompass the risk that an intoxicated oncoming driver, traveling at a high rate of speed, will cross over into a motorist's lane of travel. For these reasons, we reverse the ruling of the lower courts.
REVERSED.
KNOLL, J., not on panel, recuse. Rule IV, Part 2, § 3.
LEMMON, J., concurs and assigns reasons.
MARCUS, KIMBALL, VICTORY and TRAYLOR, JJ., concur in the result.
CALOGERO, C.J., dissents and would affirm the decision of the lower courts.
LEMMON, Justice, concurring.
A breach of duty which denies a tort victim the opportunity to avoid an accident can be a cause-in-fact of the accident. The critical issue in the present case is whether any breach of duty by the Department to clear trees and bushes from the highway right-of-way was a substantial factor contributing to this accident.[1] To prevail against the Department, it was necessary for the plaintiff to establish that this accident, more probably than not, would have been prevented if the Department had cleared the trees and bushes form the right-of-way in this particular area.
The most that plaintiff established on this record was that if the trees and shrubs had been cleared, he would have had an additional period of time[2] to discover his perilous situation and take evasive action. However, the meaningful reaction time did not begin to run until Page ran off the road and attempted to maneuver his vehicle from the gravel shoulder back onto the highway, when he spun out of control into plaintiff's lane.[3] *575 Since the collision occurred almost immediately after Page spun out of control, there was no time for reaction and evasive action once plaintiff recognized that Page's vehicle was out of control. The fact that clearing of the trees and bushes might have given plaintiff a couple of additional seconds of obstruction-free visibility prior to Page's spinning out of control is of little moment because it would have taken plaintiff that long to recognize the situation and to consider and choose from possible evasive actions, not knowing which lane Page would occupy when they reached the point where the impact ultimately occurred.
Inasmuch as there was an insufficient evidentiary basis, on the record viewed in the light most favorable to the party who prevailed before the trier-of-fact, for the trial court's factual conclusion that the Department's failure to clear the trees and bushes was a cause-in-fact of this accident, I concur in the majority decision that the judgment was manifestly erroneous.
NOTES
[1] The 1996 tort reform radically reduced if not eliminated Louisiana strict liability. Today the plaintiff must prove that the defendant knew or should have known of the defect in the thing or building and failed to exercise reasonable care. The plaintiff must also establish that the damages fall within the scope of the risks that led the law to determine that the alleged tortfeasor's conduct was tortious. Even then the defendant can avoid liability by establishing an affirmative defense or comparative fault. See Maraist, supra, § 1-1 § 1-10. pp 1-15.
[2] Subsequently amended by Acts 1992, No. 581 Sect. 1; and Acts 1995 No. 828, Sect. 1 eff. Nov. 23, 1995.
[3] Held that while the basis for determining the existence of the duty is different in Article 2317 strict liability cases and in ordinary negligence cases, the duty that arises is the same.
[4] La. R.S. 48:21(A) provides: Functions

A. The functions of the department shall be to study, administer, construct, improve, maintain, repair, and regulate the use of public transportation systems and to perform such other functions with regard to public highways, roads, and other transportation related facilities as may be conferred on the department by applicable law.
[1] Whether there was a duty to clear these trees and shrubs under these particular circumstances is a separate issue that we need not reach.
[2] The trial judge noted that the evidence did not establish a specific period of additional time, but that "clearly he would have had more time."
[3] The evidence established that the highway curved gradually to plaintiff's right as he approached the point of impact; that there were trees and bushes on his right four to six feet off the highway; that plaintiff first heard sirens about five seconds before the collision when he was 350 feet from the point of impact and Page was almost 500 feet from the point of impact; that Page, driving at approximately sixty-five miles per hour or ninety-six feet per second, left the roadway and traveled a short distance on the gravel shoulder, and then attempted to regain control into his lane and immediately spun across the center line into plaintiff's lane where the accident occurred; and that plaintiff, driving at approximately forty miles per hour or fiftynine feet per second, first saw the oncoming vehicle when Page was seventy to eighty feet away, and plaintiff attempted to veer to his right, but did not even leave his lane before being struck.