WILLIAMS, J.
 

 liThe plaintiff, Amethyst Construction, Inc., appeals a judgment in favor of the defendants, J.S. Rugg Construction, Inc. and Ohio Casualty Insurance Company. The trial court found that defendants were entitled to deduct from the final payment the increased cost of hiring another company to complete the job after plaintiff had left the job site. For the following reasons, we reverse and render.
 

 FACTS
 

 In March 2007, the general contractor for a church construction project, J.S. Rugg Construction, Inc. (“Rugg”), accepted the bid of Amethyst Construction, Inc. (“Amethyst”) for installation of an asphalt parking lot. Initially, Rugg presented a “Project Work Schedule” providing that Amethyst would install the soil cement base on July 23-25, 2007 and pei’form asphalt paving on August 9-10, 2007. However, construction was delayed over time and Rugg was not ready for Amethyst to begin work according to the original schedule.
 

 At the end of October 2007, Rugg contacted Amethyst and said that the parking lot was ready for the soil cement. Prior to starting work, Amethyst’s asphalt superintendent, Ben Holdman, visited the job site and determined that the grading work, which had been done by another company, did not provide proper drainage and that additional work was needed. Holdman did not immediately inform Rugg about this problem. On November 12, 2007, Rugg sent a “schedule update” stating its understanding that Amethyst was to have begun work on November 1, 2007. Holdman then informed Rugg about the problem with the grade of |2the lot and the parties agreed that Amethyst would correct the grade.
 

 On November 20, 2007, when the grading work began, Amethyst workers found chunks of cement and other debris under the soil that needed to be removed before applying the soil cement. Following removal of the debris, Amethyst completed the application of soil cement on Tuesday, December 11, 2007. Because soil cement must cure for at least 72 hours before applying asphalt, the first business day on which asphalt could have been poured was Monday, December 17, 2007. However, Amethyst had committed to start another
 
 *883
 
 asphalt job on that date and did not go to the church site. Rugg’s principal, Steve Rugg, contacted Holdman, who said that Amethyst would not be able to do the work that week and would be closed the next two weeks for the holidays. Holdman stated that the church parking lot would be Amethyst’s first job after the new year began.
 

 On Wednesday morning, January 2, 2008, Steve Rugg did not see an Amethyst crew at the job site and had not heard from Holdman. Steve Rugg then faxed a note to Amethyst stating:
 

 Please consider this letter as your notice of cancellation of our agreement on the above project effective at 3:00 p.m., Friday, January 4, 2008. If you have not completed all work by this time, I will make arrangements with another asphalt company to come in and complete this project.
 

 You were notified back in October that we were ready for you to start this project. You ignored me for two weeks and when you finally did get on site, you have been playing with the project and most recently have not shown up for the last three weeks. When I called you on the phone a week ago, you said there is no way that you would come back to work until after the 1st of the year, but when you did, I am the first on your list. Well, that day is today and there is no sign of you or anyone else that works for you. Hope you have had fun deer hunting for the last month.
 

 |3After receiving the fax, William Hold-man checked the weather forecast and saw that the temperatures would be too cold to pour asphalt on January 2 and 3, 2008. Under DOTD specifications, the ambient temperature must be at least 50 degrees Fahrenheit (F) for pouring an asphalt surface. Since the church parking lot was a two-day job, Ben Holdman told Rugg that Anethyst would not be able to meet the deadline. Amethyst later removed its equipment from the job site.
 

 Anethyst sent Rugg an invoice in the amount of $69,249.75 for the work which had been performed. Rugg paid Amethyst $56,945.25 after deducting $10,804.50, the additional amount paid to another contractor to complete the job, and the amount of $1,500 for the repair of a column and sidewalk allegedly damaged by Amethyst employees. Amethyst then filed a lien in the amount of $12,304.50, for which Rugg obtained a bond through Ohio Casualty Insurance Company (“Ohio Casualty”). The plaintiff, Amethyst, filed a petition for damages against defendants, Rugg and its insurer, Ohio Casualty, seeking to collect the full amount of the invoice.
 

 After a trial, the court issued oral reasons for judgment, finding that because Rugg had attempted to make arrangements for completion of the job after faxing the notice, the plaintiffs interpretation of Rugg’s letter as a cancellation of the contract was not reasonable. The court rendered judgment awarding Amethyst $150, but dismissed all other claims against Rugg. Plaintiff appeals the judgment.
 

 DISCUSSION
 

 The plaintiff contends the trial court erred in finding that Amethyst |.(Unreasonably terminated the contract. Plaintiff argues that Anethyst was entitled to full payment because Rugg cancelled the contract by failing to allow a reasonable time for performance under the circumstances.
 

 When the obligor fails to perform, the obligee has a right to the judicial dissolution of the contract, or according to the circumstances, to regard the contract as dissolved. In either case, the obligee may recover damages. LSA-C.C. art. 2013.
 
 *884
 
 Upon a party’s failure to perform, the other may serve a notice to perform, with a warning that unless performance is completed within a certain period of time, the contract shall be deemed dissolved. The time allowed for performance must be reasonable under the circumstances. LSA-C.C. art. 2015.
 

 The trial court’s findings of fact are subject to the manifest error standard of review. The appellate court must determine whether the trial court’s conclusion is reasonable based upon the record as a whole. Graves
 
 v. Page,
 
 96-2201 (La.11/7/97), 703 So.2d 566.
 

 In the present case, James Steven Rugg testified that he was a principal of Rugg Construction, Inc. and had worked as a general contractor for 30 years. Rugg stated that although he had originally scheduled plaintiff to apply the soil cement in July 2007 and pour asphalt in August 2007, the job was approximately three months behind schedule and the site was not ready for plaintiff at that time. Rugg testified that in late October 2007, he told Ben Holdman that the site was ready for soil cement. Rugg stated that he was later informed by Holdman of the problems concerning the grade of the parking lot and the debris under the soil. Rugg testified that on [.¿December 17, 2007, he called Holdman to ask about the job and was told that Amethyst would not be able to work at the church site that week and would be closed the last two weeks of the year for employee vacation. However, Holdman said that the church site would be the first job done after the start of the new year. Rugg testified that when he did not see the Amethyst crew at the site on January 2, 2008, he faxed the notice of cancellation to Holdman. Rugg stated that he was aware that there needed to be a minimum air temperature when pouring asphalt, but that he had not checked the weather forecast for the projected high temperature for that day or the next before sending the notice to Amethyst. Rugg acknowledged that he would not want asphalt poured with a high temperature of 40 degrees (F).
 

 Benjamin Holdman, a civil engineer, testified that he was the asphalt superintendent for Amethyst, which was originally scheduled to pour soil cement and asphalt in July and August 2007, but the site was not ready. Holdman stated that after delays caused by the improper grade of the lot and the presence of debris under the soil, Amethyst finished the soil cement work on December 11, 2007. He testified that Amethyst was ready to begin pouring asphalt on January 2, 2008, but the forecast high temperature of 40 degrees (F) was too cold. Holdman explained that the DOTD standards provided that asphalt shall not be applied when the ambient temperature is below 50 degrees (F) for a wearing course, which is the surface of the asphalt. Holdman testified that when Amethyst received Rugg’s fax dated January 2, 2008, stating that the contract was can-celled unless the asphalt work was completed by January 4, 2008, the forecast high temperature of 37 ^degrees (F) for January 3, 2008 was also too cold and would prevent pouring asphalt. Holdman stated that because Amethyst would not be able to complete the two-day job by the imposed deadline, he advised Steve Rugg to get another company to finish the project.
 

 William Holdman, a civil engineer and president of Amethyst, testified that the architect’s plans for the church lot referenced the use of DOTD specifications for the job. Holdman stated that the DOTD standard for pouring an asphalt wearing course was 50 degrees (F) and rising. He testified that during the week of December 17, 2007, Amethyst did asphalt jobs in
 
 *885
 
 West Monroe and Ruston because of previous commitments to those projects, which were on schedule. In addition, Holdman explained that those locations were closer to the Amethyst plant and because of the cold temperatures, he needed to consider not only the pouring of the asphalt, but also the ability to maintain the temperature of the asphalt mix given the required hauling time to the site. Holdman testified that if the asphalt temperature was too low when it arrived at the site, then the density would be wrong and the product would be inferior. Holdman stated that after receipt of the fax dated January 2, 2008, he saw that the forecast high temperature was 37 degrees for January 3, 2008, thus, leaving only one day in which to finish a two-day job. Holdman testified that Rugg’s January 4, 2008 deadline was impossible to meet considering the weather conditions.
 

 Pursuant to Article 2015, a party’s notice to perform within a certain time must allow the other party a reasonable time for such performance according to the circumstances. The record shows that the original project 17work schedule provided a period of two days for plaintiff to perform the asphalt paving job. In his testimony, Steve Rugg acknowledged that although he was aware of the temperature restrictions in pouring asphalt, he did not check the forecast temperatures for January 2-3, 2008 before faxing to Amethyst the notice of cancellation imposing the January 4th deadline for completion of work. Such a disregard for the circumstances is a factor in weighing the reasonableness of Rugg’s notice.
 

 In its appellate brief, Rugg asserts that plaintiff was at fault for leaving the job without waiting to see if the weather forecast would prove to be accurate. Contrary to Rugg’s assertion, the testimony indicated that the plaintiff could not reasonably be expected to haul asphalt to the church site with temperatures in the 30’s and then wait for a number of hours, hoping that the temperature might rise to 50 degrees and the asphalt would not cool so as to be unusable. The plaintiff necessarily responded to Rugg’s fax on the basis of the weather information which was available at the time.
 

 Based upon our review of the record and the applicable law, we must conclude that the trial court erred in focusing on plaintiffs interpretation of the cancellation notice and in failing to address the actual issue of whether Rugg’s notice allowed plaintiff a reasonable time in which to perform under the existing circumstances. The evidence presented demonstrates that the high temperatures forecast for January 2-3, 2008 were too cold for plaintiff to begin its performance of the asphalt paving work on those days. Thus, Rugg’s notice of cancellation, requiring completion of work by 3:00 p.m. on January 4, 2008, gave the plaintiff only one day to finish the asphalt paving |¿job, which both parties agreed would have required two days to complete. Consequently, the restrictive deadline imposed by Rugg cannot be considered to have provided a reasonable time for plaintiffs performance according to the circumstances that existed.
 

 Therefore, Rugg’s notice faded to comply with the statute and the plaintiff is not liable for the additional cost to Rugg in completing the parking lot. Accordingly, we shall reverse the trial court’s judgment dismissing the plaintiffs claim for full payment for the work performed.
 

 The plaintiff also contends the trial court erred in awarding Rugg $1,000 for repair work that had not yet been performed. At trial, John Rugg testified that he observed Amethyst equipment ride over a sidewalk and cause the damage shown in photographs introduced into evi
 
 *886
 

 dence. Steve Rugg
 
 estimated that the materials and labor required to repair the sidewalk would cost $1,000. Plaintiff did not present evidence to contradict Rugg’s cost estimate. Based on this record, we cannot say the trial court erred in finding that the sidewalk repair would cost $1,000. Thus, we shall render judgment in favor of plaintiff for the balance due of $12,304.50, with a deduction of $1,350 for repair costs.
 

 CONCLUSION
 

 For the foregoing reasons, the trial court’s judgment is reversed and the parties shall bear' their own costs in the district court. Judgment is hereby rendered in favor of the plaintiff, Amethyst Construction, Inc., in the amount of $10,954.50, with legal interest from the date of judicial demand until paid. Costs of this appeal are assessed to the defendants, J.S. Rugg 1 ^Construction, Inc. and Ohio Casualty Insurance Company.
 

 REVERSED AND RENDERED.