# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 13-63


FELICIA CLEMENT

VERSUS

SCOTT A. CITRON, ET AL.


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2010-2918
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion and Phyllis M. Keaty, Judges.


**AFFIRMED AS AMENDED.**

**Leon Anthony Crist**
**Law Offices of Robert D. Ford**
**111 Veterans Boulevard – Suite 1670**
**Metairie, LA 70005**
**Telephone: (504) 461-4440**
**COUNSEL FOR:**
> **Defendants/Appellees - The Hanover Insurance Company, Scott A. Citron, and Hub City Ford, Inc.**

**James Paul Lambert**
**P. O. Box 53083**
**Lafayette, LA 70505-3083**
**Telephone: (337) 261-3737**
**COUNSEL FOR:**
> **Plaintiff/Appellant - Felicia Clement**

**Thomas M. Daigle**
**711 Johnston Street**
**Lafayette, LA 70501**
**Telephone:  (337) 234-4049**
**COUNSEL FOR:**
      **Plaintiff/Appellant - Felicia Clement**

**THIBODEAUX, Chief Judge.**

The plaintiff, Felicia Clement, appeals a jury verdict and a judgment pursuant to that verdict awarding her inconsistent damages arising from a rear-end collision with the defendant, Scott Citron. For the following reasons, we amend and affirm the judgment of the trial court.

## I.

## ISSUE

We must decide whether the jury awarded damages so inconsistent as to constitute an abuse of discretion necessitating a de novo review.

## II.

## FACTS AND PROCEDURAL HISTORY

On June 30, 2009, Ms. Clement, a thirty-one-year-old bank teller, who worked as a night janitor to support herself and her teenaged son, was stopped in traffic when her 1997 Mitsubishi was hit from behind by Mr. Citron. Ms. Clement's vehicle was knocked into the vehicle stopped in front of her and thus was impacted twice, first from the back and then from the front. Ms. Clement's vehicle was totaled.

Ms. Clement hit her face on the steering wheel and sustained abrasions and bruises to her left eye, contusions of the head and left shoulder, contusions and swelling of the left knee, cervical injury, and a herniated lumbar disk at L4-5.

Six months after the accident, radiating pain in her back and legs, medically termed radiculopathy, caused Ms. Clement to leave her night job as a

part-time janitor, where she had earned $4,000.00 a year in extra income. Because months of physical therapy and pain medication brought only intermittent relief, Ms. Clement's orthopedist began discussing epidural steroid injections and surgery in February 2010. Ms. Clement was still undergoing twice-weekly physical therapy sessions in March 2010.

While riding as a back-seat passenger on March 14, 2010, Ms. Clement was in a second automobile accident, wherein she sustained another cervical injury, but alleged no worsening of the lumbar injury. This was confirmed by both of her physicians and the physical therapy reports.

Ms. Clement sued Mr. Citron, his employer, Hub City Ford, Inc., and their liability insurer, The Hanover Insurance Company (collectively referred to as "the defendant"). She settled a separate claim with the driver from the March 2010 accident, and very little is known about that incident, except for the emergency room visit showing a "low" impact to the front of the car.

When steroid injections did not provide any meaningful relief, Ms. Clement left her job at the bank in May of 2011 and underwent an instrumented decompression and fusion for the lumbar disc herniation at L4-5. While the surgery was successful for the most part, at the time of trial a year later in May 2012, Ms. Clement was still under her physician's care, undergoing physical therapy for a flare-up of lumbar pain. Though she was instructed not to return to the manual labor of janitorial work, her release to return to work in the banking field was anticipated within a few weeks, when the current round of physical therapy was completed. Ms. Clement's former bank supervisor testified that she would rehire Ms. Clement when something came available. Ms. Clement, who had

been promoted to teller supervisor with a salary of $32,000.00, would have to start over, however, as a teller, which paid $20,000.00 per year.

Following trial, the jury awarded Ms. Clement all past lost wages from both jobs, $41,000.00. It awarded $100,000.00 in past medical expenses, $100,000.00 in future medical expenses, $20,000.00 for future lost earnings, $150,000.00 for pain and suffering, and zero for loss of enjoyment of life.

Ms. Clement's appeal asserts errors against the jury for inconsistent damage awards, failure to award all past medical expenses, inadequate awards for future medical costs and future earning capacity, and failure to award any amount for loss of enjoyment of life. She also asserts errors against the trial judge for failures to direct the verdict, give additional jury charges, and provide a more specific jury verdict form.

## III.

### STANDARD OF REVIEW

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993). Errors of law are reviewed de novo. *Land v. Vidrine*, 10-1342 (La. 3/15/11), 62 So.3d 36.

## IV.

### LAW AND DISCUSSION

**Inconsistent Awards**

The jury attributed all of Ms. Clement's past lost wages to the rear-end collision by Mr. Citron on June 30, 2009, by awarding the $41,000.00 she requested. This amount included $32,000.00 for the one year of work lost by Ms.

3

Clement as a bank teller supervisor from the time of surgery (May 2011) to the time of trial (May 2012); and it included $9,000.00 for the two and one quarter years of lost wages as a part-time janitor, from her resignation in January 2010 to trial in May 2012 ($4,000.00/yr. x 2¼). Accordingly, the jury found Mr. Citron liable for one hundred percent (100%) of Ms. Clement's lost wages.

The jury, however, declined to make an award that would pay for the medical treatment and expenses Ms. Clement incurred during that same time frame. Where Ms. Clement proved and documented $174,000.00 in undisputed medical expenses at the time of trial, the jury awarded only $100,000.00. Likewise, the jury awarded only $100,000.00 in future medical expenses, though the calculated cost of her surgeon's medical plan was almost four times that amount. Finally, the jury made no award for loss of enjoyment of life, though the evidence indicated otherwise.

The manifest error standard of review provides that a jury's verdict cannot be reversed unless the court, after reviewing the record in its entirety, finds there to be no reasonable factual basis for the jury's findings and determines them to be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d 880. Where, however, legal error interdicts the fact-finding process, the manifest error standard no longer applies. *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742. In such instances, if the record is complete, the appellate court is charged to make its own independent de novo review of the record. *Id*.

The supreme court has recognized that inconsistent jury verdicts may, in certain circumstances, constitute such legal error, requiring the appellate court to conduct a de novo review. *See Green v. K-Mart Corp.*, 03-2495 (La. 5/25/04), 874 So.2d 838. For example, when the jury has awarded special damages, but has

4

declined to award general damages, the reviewing court must determine whether the jury's finding is "so inconsistent as to constitute an abuse of discretion." *Id.* (citing *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70). If so, a de novo review is warranted.

Here, we find it difficult to discern the factual conclusions of the jury from the face of the jury verdict form. It is clear that the jury found that Ms. Clement suffered injuries causally related to the accident with Mr. Citron which required medical treatment and would continue to require medical treatment in the future. These conclusions are well-supported by the record. We find, however, that some of the damage awards recorded on the jury verdict form are inconsistent and constitute an abuse of discretion and legal error. Accordingly, we will conduct a de novo review of the record.

Mr. Citron admitted fault for the rear-end accident on June 30, 2009, and accepted liability for all causally related damages. Both of Ms. Clement's physicians testified that Ms. Clement's back injury and the herniated disc and resulting surgery were causally related to the June 30, 2009 accident with Mr. Citron.

More specifically, following the accident, Ms. Clement went to the emergency room on her own a few times and then treated with Dr. Robert Franklin, a physiatrist and rehabilitation specialist, two weeks after the accident. He treated her conservatively with medication. When that proved unsuccessful, he ordered MRI's of her neck and back in late August 2009. She had two bulging disks in her cervical spine and a herniated lumbar disk at L4-5. When Dr. Franklin's conservative treatment did not relieve the pain, Ms. Clement went to Dr. George Williams, an orthopedic surgeon specializing in spines.

Dr. Williams began treating Ms. Clement in October 2009 and was still treating her at the time of trial. He testified that Ms. Clement came to him with a relatively pristine spine except for the protruding disk, slipped vertebra, and instability at L4-5. This was causing narrowing of the spinal canal and inflammation of the exiting nerve roots. Dr. Williams testified that the disk herniation or protrusion at L4-5 displayed a "high signal zone" on the MRI which is indicative of a recent and acute traumatic event. The herniation faced the right L5 nerve root that goes down through the buttock, the thigh, and the anterior aspect of the tibial region to the dorsum of the foot.

Dr. Williams stated that Ms. Clement's history of having no problems before the accident, her complaints of radiating pain from her back to her thigh and calf, and his physical examination of her, were all consistent with the MRI, and the MRI was consistent with the accident on June 30, 2009.

Dr. Williams treated Ms. Clement with oral medication and with physical therapy to strengthen the core musculature. When epidural steroid injections failed to relieve the inflammation, they began to discuss surgery in the form of a spinal decompression fusion. This consisted of cleaning out the area around the slippage, giving the nerve roots room to exit, and then stabilizing the spine via the insertion of four three-inch screws and bone graft material to prevent the motion that caused the inflammation and pain. Ms. Clement finally left her job at the bank to have the surgery in May 2011. Both Dr. Williams and Dr. Franklin, the only physicians testifying at trial, related Ms. Clements low back injuries, treatments, and surgery to the June 2009 accident with Mr. Citron.

Mr. Citron was not present at trial. His counsel did not call any defense witnesses or present deposition testimony of any kind; he did not order an

independent medical examination or call any witness to refute the testimony and medical records of Dr. Williams and Dr. Franklin. He argued heavily, however, that the other accident in 2010 intervened between the accident with Mr. Citron in 2009 and Ms. Clement's surgery in 2011 and caused a significant amount of Ms. Clement's damages. He did not present any evidence on the mechanics of the second accident or ask Ms. Clement about the kind of vehicles, the speed, position, or point of impact of the vehicles involved; yet the defendant asked the jury to reduce Ms. Clement's recovery by fifty percent (50%), thereby attributing one half of her damages to the second accident.

The record in this case contained two bound volumes of exhibits, over 500 pages, 485 of which were medical records and documents submitted by Ms. Clement in support of her claims regarding the rear-end collision by Mr. Citron. The single exhibit submitted by the defendant was the emergency room record after the second accident wherein the medical personnel circled "*back*" as the injured body part. Ms. Clement explained on the stand that she told the personnel that she was already being treated for chronic back and neck pain and had taken medication for it earlier that day. They noted "exacerbation of back and neck pain." This comprises the entire evidence put on by the defense regarding the second accident. It is well-settled that one who asserts a fact must carry the burden of proving the same by a preponderance of the evidence. *Ortego v. Durand*, 419 So.2d 541 (La.App. 3 Cir. 1982).

In cases where a defendant has attempted to cast doubt on the causal link between the subject accident and the plaintiff's injuries by suggesting that another accident is responsible, this court has repeatedly held that merely raising the fact of another accident is insufficient to deflect causation.

In *Turner v. Nationwide Ins. Co.*, 503 So.2d 734 (La.App. 3 Cir. 1987), the defendant argued that the plaintiff's participation in a summer volleyball league caused the recurrence of the plaintiff's muscle spasms, rather than the subject rear-end collision. The court explained:

> The burden of proving a superseding intervening cause rests with defendants. The record is void of any evidence of Turner sustaining a particular injury while playing volleyball, and the medical testimony reveals only a possibility that volleyball was involved as a causative factor; *conjecture and possibility is insufficient to prove an intervening cause; such intervening cause must be proven by a preponderance of the evidence.*

*Id*. at 737 (emphasis added). *See also Menard v. Federated Mut. Ins. Co.*, 05-85 (La.App. 3 Cir. 6/22/05), 906 So.2d 746, *writ denied*, 05-1925 (La. 3/10/06), 925 So.2d 506.

> An intervening cause is one which comes into play after the defendant's negligent conduct has ceased, but before the plaintiff suffers injury. In situations in which there is an intervening force that comes into play to produce the plaintiff's injury (or more than one cause of an accident), it has generally been held that the initial tortfeasor will not be relieved of the consequences of his or her negligence unless the intervening cause superceded [sic] the original negligence and alone produced the injury.

*Adams v. Rhodia, Inc*., 07-2110, p. 13-14 (La. 5/21/08), 983 So.2d 798, 808 (citations omitted).

It is clear in this case that the March 2010 accident did not supersede Mr. Citron's negligence and alone produce Ms. Clement's low back injury. Particularly revealing is that Ms. Clement's MRI showed a fresh herniation of the disc at the L4-5 two months after the June 2009 accident.

8

In *Arcadian Corporation v. Olin Corporation*, 01-1060, p. 11 (La.App. 3 Cir. 5/8/02), 824 So.2d 396, 405, *writ denied*, 02-1930 (La. 10/25/02), 827 So.2d 1174, we also examined the cause-in-fact inquiry in the duty-risk analysis. "When there are multiple causes, clearly cause-in-fact exists when the plaintiff's harm would not have occurred absent the specific defendant's conduct." *Id*. at 403 (citing *Graves v. Page*, 96-2201, p. 9 (La. 11/7/97), 703 So.2d 566, 570). When applying this test to the facts, again it is clear that the June 2009 accident with Mr. Citron was the cause-in-fact of Ms. Clement's ruptured disc. Once the disc was ruptured, the second accident in March 2010 could not be a cause-in-fact of the injury because it cannot be said that Ms. Clement's injury would not have occurred without the second accident.

The substantial factor test asks whether each of the possible causes "played so important a role in producing the result that responsibility should be imposed upon each item of conduct." *Id.* In determining substantial factor, "one must consider whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm." *Id.* at 404 (quoting *Lejeune v. Allstate Ins. Co.*, 365 So.2d 471, 475 (La.1978).

Here, the record shows that Ms. Clement was being actively and continuously treated for the lumbar disc injury from the time of the accident with Mr. Citron in June 2009 until trial in May 2012. Ms. Clement went to the emergency room on June 30, July 5, and July 6, and began treating conservatively with Dr. Franklin in mid July 2009, just two weeks after the accident. She had the MRI in August 2009 and began treating with Dr. Williams in October 2009 and continued through trial. Dr. Williams first prescribed physical therapy twice a

week. The record reveals that Ms. Clement had thirty-one (31) scheduled physical therapy sessions in all. The twenty-eighth (28th) session was on March 11, 2010.

The second accident occurred three days later on March 14, 2010. Ms. Clement complained only of mid-thoracic pain at her physical therapy session on March 15, the day after the second accident. She continued with two more physical therapy sessions in March, with no more than the usual complaints about the ongoing lumbar pain and radiculopathy. Her thirty-first and last physical therapy session was March 25, 2010.

Dr. Williams' office notes of February 18, 2010, had already indicated that the physical therapy was not providing the desired relief. His medical "PLAN" on that date was to proceed with lumbar epidural steroid injections and if they provided no relief, to consider surgical options. *This plan predated the second accident by a few weeks.* Yet, in the defense counsel's opening statement to the jurors, he told them that steroid injections and surgery were not even considered until after the second accident, and he continued to miss-state these facts and summarize the physician's testimony throughout trial to fit his unsupported theory regarding the second accident.

Dr. Williams treated Ms. Clement with steroid injections and medication, which provided intermittent relief throughout the remainder of 2010, but the pain always returned. In January 2011, he noted that conservative treatment had failed; he recommended the fusion at L4-5 and he began the process of obtaining authority for the surgery.

In addition to this unbroken chain of treatment by Dr. Williams for the cervical and lumbar injuries from the first accident, Dr. Franklin testified that Ms. Clement returned to him after the second accident for her additional cervical

injuries,[1] that she did not complain of any back injuries from the second accident, and that he started a *separate chart* for the new neck injuries related to the second accident. Thus, Ms. Clement has proved that all of the medical treatment claimed, the medication, physical therapy, steroid injections, and surgery, were due to the negligence of Mr. Citron, not an intervening cause, as Citron's negligence was the cause-in-fact and the substantial factor in causing her injuries, losses, damages, and expenses.

The jury's damage awards should have been consistent with each other, and consistent with the evidence, but they were not. We now turn to those awards.[2]

## Quantum of Damage Awards

### *Past Medical Expenses*

While attributing all past lost wages to the accident with Mr. Citron, the jury failed to award the medical expenses documented for the same accident and the same period of time. The jury awarded only $100,000.00 in past medical expenses out of the $174,339.00 documented. We believe the jury was influenced by the defendant's closing statement on causation that was not supported by the evidence. In closing, he specifically asked the jury to reduce the medical expenses incurred after the second accident by fifty percent (50%). Doing the math for them, he asked the jurors to award roughly $94,000.00, comprised of $13,000.00 for *all* medical expenses incurred prior to the second accident, plus $81,000.00 for

---

[1]Ms. Clement had sustained bulging discs in two locations in her cervical spine in the accident with Mr. Citron, pursuant to the cervical MRI done in August 2009, but a new MRI done after the 2010 accident showed a cervical herniation.

[2]Having found that the jury's awards are so inconsistent as to constitute an abuse of discretion, we will adjust each award accordingly and pretermit the errors asserted against the trial judge.

*one half* of the medical expenses (roughly $162,000.00) incurred after the second accident. This included the cost of the lumbar fusion. Interestingly, the jury awarded $100,000.00 for past medical expenses, just $6,000.00 more than the amount suggested by the defendant in his closing statement.

Because the defendant did not enter evidence regarding the mechanics of the second accident, the jury did not know the speed or weight of the vehicles involved, or the damage to the vehicles or their inhabitants. The only evidence the jury had on the second accident was the above discussed emergency room record. It did contain a diagram of a vehicle showing "*low*" impact and showing Ms. Clement as a *back-seat* passenger. Yet, the jury clearly attributed one half of the cost of the surgery, on the lumbar disc herniated by the double impact collision caused by Mr. Citron in the first accident, to the second accident.

The defendants did not enter Ms. Clement's medical records from Dr. Franklin on the second accident which would have been easy to obtain. "The failure of a litigant to produce evidence within his reach raises the presumption that the evidence would have been detrimental to his case." *Babineaux v. Black*, 396 So.2d 584 (La.App. 3 Cir. 1981).

*Lancon v. State Farm Mut. Ins. Co.*, 94-256, pp.7-8 (La.App. 3 Cir. 10/5/94), 645 So.2d 692, 697, *writ denied*, 95-153 (La. 3/17/95), 651 So.2d 272, involved a similar case involving two accidents, except that the plaintiff was older and had a preexisting arthritic condition before either accident. We explained:

> Throughout the trial, the defendants took the position that the June 22 accident did not necessitate Mrs. Lancon's surgery. On July 29, 1991, just five weeks after the first accident, Mrs. Lancon's car was bumped from behind at a traffic light. The defendants contend that none of Mrs. Lancon's doctors could testify to a

medical certainty that it was the June 22 accident, as opposed to the July 29 accident, which aggravated the preexisting arthritic condition to such an extent as to require surgery.

The defendants bear the burden of proving that the July 29 accident aggravated Mrs. Lancon's preexisting condition. *Turner v. Nationwide Ins. Co.*, 503 So.2d 734 (La.App. 3d Cir.1987). The defendants have failed to meet this burden. There is no basis in the record for suggesting that the July 29 accident was anything but minor; the investigating officer classified the accident as "a mild tap." . . . . The doctors who testified ultimately attributed the aggravation of Mrs. Lancon's preexisting injury to the June 22 accident. As this court stated in *Turner*: "[C]onjecture and possibility is insufficient to prove an intervening cause; such intervening cause must be proven by a preponderance of the evidence." 503 So.2d at 737 (citations omitted).

For all of the above stated reasons, we raise Ms. Clement's award for past medical expenses to the documented and undisputed amount of $174,339.00.

*Future Medical Expenses*

Dr. Williams presented a medical plan for Ms. Clement which included four annual orthopedic visits and two annual x-rays for ten years; one annual MRI/CT for five years; two annual six-week rounds of physical therapy for four years; Mobic, Flexeril, and Lortab indefinitely, with two annual liver profiles because of the medication, indefinitely. Dr. Williams admitted that these suggestions represented the worst case scenario. The cost of Dr. Williams' medical plan was not included but was calculated by counsel for Ms. Clement, using a life expectancy of seventy-seven years for the "indefinite" element; his calculations came to $391,000.00. In the alternative, her counsel suggested a reduction in the medication and requested $213,177.00.

The jury did neither and awarded $100,000.00 in future medical expenses. While we observe a tenuous quality in the suggestions made by Ms.

Clement's attorney, we do not understand the jury's arrival at its figure either. The record indicates that in the twelve months following surgery, Ms. Clement's medical expenses approximated $3,400.00. Assuming a life expectancy of forty-three (43) more years, we believe the lowest reasonable amount would be $146,200.00. Accordingly, we raise the award to that amount.

*Loss of Enjoyment of Life*

The jury awarded $150,000.00 for past, present, and future pain and suffering. However, it awarded nothing for loss of enjoyment of life.

Loss of enjoyment of life "refers to the detrimental alterations of a person's life or lifestyle or a person's inability to participate in the activities or pleasures of life that were formerly enjoyed." *Sloan v. Mouton*, 11-804, p. 10 (La.App. 3 Cir. 12/07/11), 82 So.3d 364, 372, *writ denied*, 12-48 (La. 3/9/12), 84 So.3d 556 (quoting *McGee v. A C And S, Inc.*, 05–1036, p. 4 (La. 7/10/06), 933 So.2d 770, 773). "[A] separate award for loss of enjoyment of life is warranted and is not duplicative of the award for pain and suffering, if the damages resulting from loss of enjoyment of life are sufficiently proven." *Id.* In *Sloan*, we affirmed the trial judge's additure of $15,000.00 for loss of enjoyment of life where the jury had awarded zero to a plaintiff who had undergone surgery to both hands, had a twenty-five percent disability rating, and could no longer do landscape gardening and home improvement activities.

In *Cormier v. Republic Ins. Co.*, 11-632 (La.App. 3 Cir. 1/18/12), __ So.3d __, we awarded $50,000.00 for disability and loss of enjoyment of life to a plaintiff with a preexisting hearing problem whose independence and social activities were stunted after a cervical fusion causing her a fifteen percent total

body impairment. Here, Ms. Clement's mother testified that she had lived with her daughter and was cared for by her daughter before the accident, but had to move out afterward because Ms. Clement could no longer assist her. Ms. Clement also needed her son's help in doing household chores. She testified that she had enjoyed dancing and running, but could no longer do those activities. She did however continue to make small trips if her friends did the driving. We award Ms. Clement $30,000.00 for loss of enjoyment of life.

*Future Lost Income*

The jury awarded $20,000.00 for loss of earning capacity to Ms. Clement, who was thirty-four years old at the time of trial, with a work-life expectancy of thirty-three more years. She requested twenty years of compensation for the loss of the part-time janitorial work at $4,000.00 per year, which came to $80,000.00; and she requested one year for the $12,000.00 differential between the bank teller position which paid $20,000.00 and the teller supervisor position which paid $32,000.00. Her request came to a total of $92,000.00. The Louisiana Supreme Court has stated the law on loss of future earnings as follows:

> What plaintiff earned before and after the injury does not constitute the measure. Even if he had been unemployed at the time of the injury he is entitled to an award for impairment or diminution of earning power. And while his earning capacity at the time of the injury is relevant, it is not necessarily determinative of his future ability to earn. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976). Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury.

*Ryan v. Zurich American Ins. Co.*, 07-2312, p. 8 (La. 7/1/08), 988 So.2d 214, 219 (quoting *Folse v. Fakouri*, 371 So.2d 1120, 1123 (La.1979)).

Here, Ms. Clement's doctors testified that Ms. Clement should be able to return to work at the bank within a few weeks following trial. Her supervisor testified that she would rehire Ms. Clement when she was able to return to the bank because of her work ethic and her friendly and gregarious personality that the customers liked. Ms. Clement was a teller making $20,000.00 a year at the time of the accident. Since she was apparently going back to that position right away, it was reasonable for the jury to find that the accident had caused her no diminution of earning power with regard to the bank work. The fact that she might have to wait for another supervisor's position to open up at that same bank was a matter of availability, not impairment.

With regard to the janitorial work, Ms. Clement's post-accident limitations did rule out that kind of manual labor in the future. However, where just the increase in her income due to her post-accident promotion at the bank was three times the amount she had made as a night janitor ($12,000.00 versus $4,000.00), it was reasonable for the jury to conclude that her overall earning ability was only minimally affected. While the $20,000.00 award was low, we cannot say that it was an abuse of discretion. Thus, we will not disturb the jury's award for this element of damages.

## V.

## **CONCLUSION**

For the foregoing reasons, we increase Ms. Clement's award for past medical expenses from $100,000.00 to $174,339.00; we increase the award for future medical treatment from $100,000.00 to $146,200.00; and we award

16

$30,000.00 for loss of enjoyment of life.  Costs of this appeal are assessed to the defendants.

**AFFIRMED AS AMENDED**.