MURPHY, J.
|, Defendant/Appellant, the State of Louisiana, Department of Transportation and Development (hereinafter referred to as *699 “DOTD”), appeals the judgment in favor of Plaintiff/Appellee, James Harris.[1] For the following reasons, we amend the judgment of the trial court as to allocation of fault and damages awarded and render judgment in favor of plaintiff.
FACTS AND PROCEDURAL HISTORY
This appeal stems from an automobile accident which occurred on December 28, 2009 at approximately 4:30 p.m., between a vehicle driven by James Harris and a vehicle driven by Marilyn Berniard. While driving northbound on US Hwy 61 (also known as “Airline Highway”) in her Ford Explorer, Ms. Berniard began to drive erratically by drifting from the left lane to the right láne, to the shoulder and back to the left lane and then straddling the two lanes. Eventually, Ms. Berniard’s vehicle angled toward the median that divided the northbound and southbound lanes and crossed over into the opposite lanes of traffic. Mr. Harris, driving a GM Hummer and traveling in the left southbound lane of US Hwy 61, moved into the right lane and then onto the shoulder in an attempt to avoid the Berniard vehicle. However, the Harris vehicle was struck by the Berniard vehicle despite Mr. Harris’ evasive maneuvers. Mrs. Harris and two of the couple’s grandchildren were passengers in the Harris vehicle. As a result of the accident, Mr. Harris sustained injuries to his left leg, foot, and hip, which resulted in amputation of his left leg eight inches below the knee.
On December 28, 2010, the Plaintiff filed a Petition for Damages against DOTD and Ms. Berniard’s insurance carrier, Progressive Security Insurance 12Company.[2] In the petition, Plaintiff alleged DOTD was negligent in “failing to provide for a median barrier to prevent vehicles traveling in the northbound lanes from crossing over into the southbound lanes of travel on US Hwy 61.”
The matter proceeded to trial against DOTD on April 11-13, 2016. At the conclusion of Plaintiffs presentation of evidence, DOTD orally moved for a directed verdict, pursuant to La. C.C.P. art. 1810, on the basis that Plaintiff failed to prove negligence or fault on the part of DOTD. The trial court denied the motion and found .that Plaintiff presented sufficient evidence for a jury to return a verdict, based upon the preponderance of evidence. Subsequently, the trial continued. Following the presentation of DOTD’s defense, the trial court granted Plaintiffs motion for directed verdict finding that Mr. Harris was not comparatively at fault for the accident. Plaintiff also moved for a directed verdict regarding Ms. Berniard’s fault for the accident, averring that the State was 100% at fault, and Ms. Berniard’s erratic driving was not the cause of the accident. This motion was denied.
At the conclusion of the trial, the jury returned a verdict in favor of Plaintiff, attributing 90% of fault to DOTD and 10% to Ms. Berniard for the. accident. The jury awarded Plaintiff $5,000,000 for past, present and future physical pain and suffering, mental anguish,. and disability, $1,000,000 for past, present and future loss of enjoyment of life, $343,788.71 for past medical expenses, $136,209.15 for future medical expenses, $645,003 for past lost wages, $315,966 for future lost wages and loss of earning capacity, and $57,658 for loss of fringe benefits for. a total award of $7,498,624.86. In. addition, the trial court awarded Plaintiff future medical expenses stating, “all medical care and related benefits incurred 1 ..¡subsequent to judgment, be *700 paid from the Future Medical Care Fund as provided in La. R.S. 39:1633.2. :
In a judgment rendered on April 22, 2016, applying the jury’s findings regarding third-party fault to the monetary award, the trial court determined DOTD’s proportionate responsibility. Pursuant to La. R.S. 13:5106(B)(1), the trial court' capped DOTD’s liability to Mr. Harris for general damages and reduced the jury award to $500,000 plus interest. The trial court then awarded Mr. Harris $309;408.84 in past medical expenses, $580,502.70 in past lost wages; $294,369.40 for future lost wages and loss of earning capacity, $51,892.20 for loss of fringe benefits, $1,726,174.14 in interest on the judgment at a rate of six percent per annum from December 28, 2010, reimbursement of $2,950 for the full amount of Mr. Harris’s jury deposit, and judicial interest, pursuant to La. R.S. 13:5112(C), and court costs. The trial court found that Mr. Harris was entitled to all future medical payments related to the injuries he sustained in the December 28, 2009 accident and Ordered that all medical care and related benefits incurred subsequent to the judgment be paid from the Future Medical Care Fund, as provided in La. R.S. 39:1533.2. The instant appeal followed.
On appeal, DOTD argues that the trial court abused its discretion in finding any liability on the part of DOTD,[3] assessing 90% liability to DOTD and only 10% liability to Ms. Berniard, and in awarding $5,000,000 in general damages for past, present and future mental • and physical pain and suffering-and $1,000,000 for loss of enjoyment of life.
J^LAW AND ANALYSIS
Finding and Allocation of Fault
DOTD alleges the jury erred in finding any fault on its part for the accident between Plaintiff and Ms. Berniard. It insists Plaintiff failed to carry his burden of proving any liability or negligence on the part of DOTD. DOTD argues that. Plaintiff failed to prove that the median was unreasonably dangerous, that the median did not meet standards at .the time of the original construction or at the time of any subsequent, modifications, and that there was no major reconstruction of. the roadway in question that would have required it to bring the roadway and the appurtenances to modern standards. DOTD further contends that Plaintiff failed to prove that it had actual or constructive notice of any defect in the median and failed to remedy it in a reasonable period-of time because there was no evidence presented of any prior complaints concerning the median or any evidence of prior accident history at that particular location, DOTD also argues Plaintiff failed to prove by a preponderance of the evidence that a jersey barrier was required at the location of the accident. Alternatively, DOTD argues that the trial court abused its discretion in assessing 90% fault and only 10% fault to Ms. Berniard.
*701 Plaintiff maintains that the judgment of the trial court and the -jury’s findings are reasonably supported in all respects by the record as a whole. They contend the jury was presented with evidence that the location of the accident contained a defect that presented an unreasonable risk of harm in that the barrier curb was a defect that presented motorists with an unreasonably dangerous condition. As- such, Plaintiff avers the jury’s factual determinations are reasonably supported by the evidence and should not be determined to be manifestly erroneous.
The appropriate standard for appellate review in this case is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court’s I [¿finding of fact unless that finding-is clearly wrong in light of the record reviewed in its entirety. Hayes Fund for the -First United Methodist Church of Welsh, LLC v, Kerr-McGee Rocky Mt., LLC, 14-2592 (La. 12/08/15), 193 So.3d 1110, 1115. It is well settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or .unless it is “clearly wrong.” Stobart v. State through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La. 1993). The Supreme Court has proclaimed a two-part test for the reversal of a factfinder’s determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that, the finding is clearly wrong (manifestly erroneous), Lomont v. Myer-Bennett, 14-2483 (La. 06/30/15), 172 So.3d 620, 633. Although deference to the factfinder should be accorded, the Louisiana Supreme Court has instructed that an appellate court has a constitutional responsibility to review the entire record and to determine whether, as a whole, it supports the judgment rendered by the trial court. Ambrose v. New Orleans Police Dep’t Ambulance Serv., 93-3099 (La. 07/05/94), 639 So.2d 216, 221. Nevertheless, even though we are required to give deference to the trial court’s findings, we are not obliged .to “rubberstamp” all factual determinations made by the trial court. Lomont, 172 So.3d at 633.
In a case against DOTD the plaintiff has the burden of proving: (1) DOTD had 'custody of the thing that caused the plaintiffs injuries; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) DOTD had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time; and (4) the defect was a cause-in-fact of the plaintiffs injuries. Goza v. Parish of West Baton Rouge, 08-0086 (La. App. 1 Cir. 05/05/09), 21 So.3d 320, 329, writ denied, 09-2146 (La. 12/11/09), 23 So.3d 919, cert. denied, 560 U.S. 904, 130 S.Ct. 3277, 176 L.Ed.2d 1184 (2010).
IfiDOTD has a duty to continually maintain the public roadways in a condition that is reasonably safe and does not present an unreasonable risk of harm to the' motoring public exercising ordinary care and reasonable prudence. Campbell v. La. Dep’t of Transp. & Dev., 94-1052 (La. 01/17/95), 648 So.2d 898, 901. This duty, however, does not render DOTD the guarantor of the safety of all of the motoring public or the insurer for all injuries or damage's resulting from any risk posed by obstructions on or defects in the roadway or its appurtenances. Forbes v. Cockerham, 08-0762 (La. 01/21/09), 5 So.3d 839, 858.
Whether an unreasonably dangerous defect caused the plaintiffs damages is a finding of fact and an appellate court may not overturn a jury’s finding of *702 fact in the absence of manifest error or unless clearly wrong. Goza, 21 So.3d at 334. Generally, when more than- one cause combines to bring about a plaintiffs harm, the substantial factor test is used to determine whether a particular defendant’s conduct is a cause-in-fact in bringing about the plaintiffs harm. Graves v. Page, 96-2201 (La. 11/07/97), 703 So.2d 566, 570; Goza, 21 So.3d at 334. The substantial factor test works well where there are multiple causes-in-fact, but the trier-of-fact may not be able to conclude that the accident would more probably than not have happened “but for” any one of the causes. Graves, 703 So.2d at 570.
The allocation of fault is within the sound discretion of the trier-of-fact and will not be disturbed on appeal in the absence of manifest error. Edmond v. Cherokee Insurance Company, 14-1509 (La. App. 1st Cir. 04/24/15), 170 So.3d 1029, 1036-37.
The Louisiana Supreme Court has instructed that in allocating fault between the parties, the trier-of-fact is bound to consider the nature of each party’s wrongful conduct and the extent of the causal relationship between that conduct and the damages claimed. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La. 1985). In assessing the nature of the parties’ conduct, | factors that may influence the degree of fault allocated include: (1) whether the conduct resulted from inadvertence or invQlved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances that might require the actor to proceed in haste, without proper thought. Watson, 469 So.2d at 974; Goza, 21 So.3d at 331.
An individual driver owes a duty to operate his vehicle in a prudent manner, which includes the duty to maintain control of it and to remain within his lane of travel. Graves, 703 So.2d at 573.
In the case at bar, the parties stipulated that US Hwy 61 was in the custody and control of DOTD. Plaintiff then had to prove that the highway was defective because it had a condition that created an unreasonable risk of harm, DOTD had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time, and that the defect was a cause-in-fact of the plaintiffs injuries. Goza, 21 So.3d at 329. The record contains voluminous testimony from both sides on these issues.
At trial, George Byers, II, testified that he was driving behind Ms. Berniard prior to the accident, and that Ms. Berniard was driving erratically for at least two miles before she crossed the median and struck the Harris vehicle. Mr. Byers explained that Ms. Berniard was proceeding in a northerly direction in the right lane and he was driving in the same direction behind Ms. Berniard’s vehicle. Mr. Byers moved into the left lane in an attempt to pass Ms. Berniard. However, Ms. Berniard’s vehicle moved into the left lane causing Mr. Byers to slow down and “back away” to avoid Ms. Berniard’s vehicle. Ms. Berniard then slowed down and moved back into the right lane of travel and increased her speed. Mr. Byers continued to follow Ms. Berniard who continued to speed up then slow down and drift back and forth from the shoulder to the right lane and into the left lane. About | sa mile and a half further down the road, Ms. Berniard began to drive straddling the left and right lanes. She continued driving in both lanes for about a quarter of a mile, and then she made a turn towards the median, jumped the median and struck the Harris vehicle. *703 Mr. Byers testified that the Harris vehicle moved from the left southbound lane of travel and was partially in the right southbound lane and partially on the shoulder when it was struck by Ms. Berniard’s vehicle. Mr. Byers explained that the diagram drawn by the state trooper who investigated the accident showed the Berniard vehicle crossing the median at a gradual angle; Mr. Byers disagreed with the angle shown on the state trooper’s diagram. Mr. Byers testified that Ms. Berniard hit the median at about a 45 degree angle.
The videotaped deposition of Trooper Blake Lemoine, who investigated this accident, was played for the jury. Trooper Lemoine was not able to get a statement from Ms. Berniard. She was 72 years old at the time of the accident and died from injuries she sustained in the accident. There was a handicap license plate on Ms. Berniard’s vehicle. Drugs and alcohol were not a factor in this accident. Trooper Lem-oine testified that he estimated the speed of the Berniard vehicle to be 50 miles per hour and that of the Harris vehicle to be 42 miles per hour at the time of impact. The Berniard vehicle traveled eleven feet from the point of impact. Trooper Lemone testified that the evidence at the scene showed that the Berniard vehicle crossed the median. Trooper Lemoine was told by Mr. Byers that the Berniard vehicle “launched” into the air when it struck the median.
At issue in this case is the type of median curb on US Hwy 61 at the accident site. The type of median curb in place at the time of the accident is known as a barrier curb, which has a vertical face. Plaintiff contends that, given the 55 miles-per-hour speed limit at this location, a jersey curb should have been in place on this stretch of highway. A jersey curb is a mountable or sloping type of median curb 13which has a slanted face. Plaintiff argues that a jersey curb would have prevented the Berniard vehicle from crossing over the median into oncoming traffic. DOTD contends that a jersey curb was not required at this location.
Robert Eisman, a project manager of road design projects employed with DOTD, was called to the stand by Plaintiff. Mr. Eisman testified that the American Association of State Highway and Transportation Officials’ (hereinafter referred to as “AASHTO”) manual published in 1973, provides a policy that gives recommendations for different types of roadways and confirmed that DOTD is required to conform to AASHTO’s minimum safety guidelines with respect to highway and bridge designs, construction, and maintenance. He also confirmed that AASHTO’s guidelines stated that barrier curbs were considered undesirable for arterial streets designed with speeds above 50 miles-per-hour because most barrier curbs are not adequate to prevent a vehicle from leaving the roadway. The posted speed limit at the accident site is 55 miles-per-hour. Mr. Eis-man agreed that, if a jersey curb had been placed at the location of -the accident, it would have been more difficult for Ms. Berniard to cross over into the lane of oncoming traffic.
When questioned regarding construction projects performed at the location of the accident on US Hwy 61, Mr. Eisman stated this this median was first constructed in 1951 as a part of a widening project, whereby US Hwy 61 became a four-lane highway with two lanes in each direction. The median was originally built with a mountable curb and was four feet in width and four inches in height. In 1955, that stretch of US Hwy 61 had another widening project that increased the width of the lanes. While overlaying the existing asphalt on the road, the height of the median was reduced from four inches to one-half *704 inch; however, the median height complied with the minimum standards at that time. The next road project in Imthe area took place in 1966, when two more inches of asphalt was added to the roadway. Because the one-half inch median would have been lower than the roadway, six inches of concrete was added to the curb to create a curb above the level of the highway. In 1975, US Hwy 61 was widened to introduce turning lanes at various locations through the corridor. During this project, the height of the curb was increased again, and a barrier curb was built. Mr. Eisman testified that DOTD violated its own guidelines in the Engineering Directives and Standards Manual (hereinafter referred to as “EDSM”) when it constructed a barrier curb on the median of the location of the accident in 1975 because the guidelines did not allow that type of curb on a median. The last project on this stretch of roadway prior to the accident, which took place in 1980, was a drainage project which did not involve the roadway or median.
Herman Hill was accepted by the court as an expert in traffic, engineering .and accident reconstruction., Mr. Hill quoted the, portion of the 1973 AASHTO publication which states “barrier curbs should not be used where design speeds are above 50 miles per hour.” Mr. Hill testified that' AASHTO’s policies are adopted by all states and. the AASHTO policies áre incorporated into the EDSM, thus, DOTD had actual knowledge of the curb design guidelines set forth in AASHTO’s “Policy on Design of Urban Highways and Arterial Streets” published in 1973. He confirmed Mr. Eisman’s testimony that the EDSM provides that barrier curbs are only to be used on curbs adjacent to sidewalks, and not on medians.
Based upon his review of the materials provided to him, Mr. Hill opined that DOTD failed to preserve the original design of the US Hwy 61 median, and that a new curb was constructed in 1975. He stated that the 1975 project was a major construction, and DOTD should have adhered to the AASHTO and EDSM guidelines and placed a jersey barrier on the median.
In Mr. Hill Opined that the barrier curb contributed to the accident between Mr. Harris and Ms; Berniard, and that the placement of a jersey barrier in that area would have prevented Ms. Berniard from crossing into Mr/ Harris’s lane of travel. Mr. Hill testified that the use of the barrier curb in- conjunction with the high speed and narrow median caused -that section of US Hwy 61 to be unreasonably dangerous. On cross-examination, Mr. Hill admitted that he did not know of any organization or policy that required the use of a jersey barrier at the accident site.
DOTD presented the testimony of Vernon “Dean” Tekell, an expert in traffic engineering and accident reconstruction. He inspected the accident site in 2014. Mr. Tekell testified that the 1965 AASHTO rural standards permitted barrier curbs for use on median islands, and the height of the barrier curb met policy standards. Mr. Tekell explained that the 1973 AASH-TO publication referred to by Plaintiffs experts was entitled the' “Policy for Urban Streets and Highways.” Mr/ Tekell stated that this 1973 publication states that barrier curbs should not be used on freeways and the, use of barrier curbs is discouraged on arterial- streets, however, barrier curbs are permitted on arterial streets. Mr. Te-kell testified that La. R.S. 48:35 requires that Louisiana adopt standards for its roadways that are consistent with the guidelines published by AASHTO. The median at the accident site was installed in 1966 and reconstituted in 1975. Mr. Tekell testified that .the work performed in 1975 on. this highway at the accident site was a *705 “pavement-rehabilitation project” and not a reconstruction. After reviewing the guidelines for barrier design, Mr. Tekell opined that there was no requirement to put a jersey barrier in the median at the accident site. Mr. Tekell testified that the median at the accident site complied with the design policies that were in effect “each time the roadway was designed.” Mr. Tekell implied that there was nothing that classified this section .of the roadway as rural or urban so he was not sure that the 1973 AASHTO publication applied here. Finally,’ Mr. Tekell opined the cause of the [ 12accident was Ms. Berniard crossing the median and that no defect in the median caused or contributed to the accident. However, on cross-examination, Mr. Tekell admitted that barrier curbs are discouraged in high-speed environments and that the severity of certain types of accidents may be increased as a result of the use of a barrier curb. He elaborated that a concern with a barrier curb on a high speed highway is that if a vehicle encounters the barrier curb, the vehicle could vault oyer the median as in this case. He further admitted that the barrier curb was the cause of Ms. Berniard’s vehicle vaulting over the median and that a jersey barrier would have prevented Ms. Bern-iard’s vehicle from crossing the median.
Thus, through the testimony of Mr. Eis-man, Mr. Hill and Mr. Tekell, plaintiff carried its burden of proving that this section of highway was defective because it had a condition, i.e., a barrier curb, which created an unreasonable risk of harm. The testimony of these same witnesses proves that DOTD had actual knowledge of the defect, i.e., the barrier curb, and failed to take corrective measures within a reasonable time.
DOTD argues that the sole cause of this accident was that of Ms. Berniard crossing into the lanes of oncoming traffic and urges this Court to follow our prior ruling in Rogers v. Roch, 95-242 (La. App. 5 Cir. 10/18/95), 663 So.2d 811, which also involved an accident caused by a driver who crossed over into the lane of oncoming traffic. In Rogers, the .plaintiff argued that the Parish was at-fault in that accident due in part to the lack of a median barrier on a bridge. Although Rogers and the case at bar both involve cross-over accidents, in Rogers, there was no median barrier. In contrast, in the present case, the negligence of DOTD in placing a barrier curb in the median caused the Berniard vehicle to vault, or in the words of the eyewitness “launch,” over the median and violently crash into the large Harris vehicle. Thus, | isthe facts in Rogers are distinguishable from those in the case at bar and as such Rogers is not controlling given the facts of the instant case.
A review of the evidence regarding the fault of DOTD indicates that there is evidence that DOTD was negligent in placing a barrier curb on this roadway. However, the mere fact that there is some evidence in the record which would support a basis for the jury’s allocation of fault does not require that the allocation of fault be affirmed. Davis v. Owen, 368 So.2d 1052, 1056 (La. 1979). Although appellate courts must accord great weight to the factual findings of the trial court, appellate courts have a duty to determine if the “fact finder was justified in his conclusions.” Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987).
Having reviewed the record in this case in its entirety, we find that a reasonable factual basis does not exist for the jury’s finding that DOTD was 90% at fault in causing this accident. Furthei’, after a review of the record in its entirety, giving deference to the fact finder, and cognizant of the constitutional duty of this Court to review facts, not merely to decide *706 if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court’s verdict was manifestly erroneous/clearly wrong based on the evidence, we find that that the record establishes that the allocation of fault in this case is clearly wrong.
There is no dispute that the accident in this case happened in plaintiffs lane of travel. The uncontroverted testimony of Mr. Byers, who was driving behind Ms. Berniard prior to the accident, made it clear the Ms. Berniard was driving erratically for at least two miles before she crossed the median and struck the Harris vehicle.
Applying the factors enumerated in Watson, 469 So.2d at 974, to the conduct of Ms. Berniard, it is apparent that her failing to keep her vehicle in her lane of travel created a substantial risk of harm. Thus, the evidence indicates that | uMs. Berniard could have avoided the accident. She breached her duty to maintain control of her vehicle and remain in her lane of travel, and Ms. Berniard’s conduct was a cause-in-fact of the accident.
The expert testimony indicates that the AASHTO standards do not state that a jersey curb is required on the stretch of highway at the accident site, or that a barrier curb is prohibited in the median of the highway at the accident site. However, all experts recognized that barrier curbs were not recommended for highways with speeds in excess of 50 miles-per-hour and that the barrier curb is what caused Ms. Berniard’s vehicle to vault over the median. Both experts also agreed that a jersey barrier would have prevented this accident. DOTD has no duty to bring old highways up to modern AASHTO standards, unless a new construction or major reconstruction of the highway has taken place. Aucoin v. State Through Dep’t of Transp. & Dev., 97-1938, 97-1967 (La. 4/24/98), 712 So.2d 62. Nevertheless, DOTD has a duty to correct conditions existing on old highways that are unreasonably dangerous. Toston v. Pardon, 03-1747 (La. 04/23/04), 874 So.2d 791, 799. Thus, the testimony indicates that DOTD breached its duty to motorists using this roadway. Specifically, Mr. Eisman, a project manager and engineer with DOTD, testified that the stretch of Airline Highway where the accident occurred was designed to have a four-inch high, and four-foot wide mountable curb, and was built according to that design. Mr. Eisman testified that in 1975, the median was modified and a vertical barrier median curb was added. This median was modified after the publication of the 1973 AASHTO guidelines which provide that barrier curbs are only to be used on curbs adjacent to sidewalks and not on medians. Mr. Eisman admitted that at the time the median was modified in 1975, it was more likely than not that DOTD knew of the 1973 guidelines. In addition, Mr. Tekell, DOTD’s own expert, testified that DOTD is | ^required by statute to adopt roadway standards that comply with the guidelines set forth by AASHTO.
Mr. Hill testified that the barrier curb is not safe, explaining that when a vehicle gets too close to the curb, “they’re going to encounter something there that’s going to be very difficult for them to maintain control.” Mr. Hill testified that a barrier curb is not safe on high-speed highways; he classified this section of the highway as a high-speed highway based on the posted speed limit of 55 miles per hour. DOTD’s expert, Mr. Tekell, admitted on cross-examination that barrier curbs are discouraged on high-speed environments and that the severity in certain types of accidents may be increased as a result of the use of a barrier curb. Although Mr. Tekell testified that the cause of this accident was Ms. *707 Berniard crossing the median, he further admitted that the barrier curb was the cause of Ms. Berniard’s vehicle vaulting, or “launching,” over the median. He opined that a jersey barrier would have prevented Ms. Berniard’s vehicle from crossing the median.
Applying the Watson factors to the testimony regarding the conduct of DOTD indicates that DOTD created a risk of harm by allowing the barrier curb to be in place on this roadway and that DOTD was aware of the danger created by the barrier curb. DOTD was in custody and control of this roadway, accordingly, DOTD had the ability to modify the median of the roadway. Thus, the conduct of DOTD in failing to provide a safe roadway was also a cause-in-fact of this accident. While DOTD had the duty to provide a safe roadway, the fact remains that Ms. Berniard was driving erratically which caused her vehicle to strike the barrier curb which caused her vehicle to vault over the median and crash into the Harris vehicle.
Complying with this Court’s constitutional responsibility to review the entire record and to determine whether, as a whole, it supports the judgment | lfirendered by the trial court, we find that the jury’s allocation of fault is clearly wrong. Although it is the very rare case in which the appellate court should disturb the jury’s determination of fault, given the specific facts and circumstances of this case, our review of the appellate record in its entirety indicates that a reasonable factual basis for the jury’s allocation of fault does not exist and the jury’s allocation of fault is clearly wrong.
Comparing the fault of Ms. Berniard in driving erratically, failing to maintain control of her vehicle, and entering plaintiffs lane of travel, with DOTD’s negligence in placing an inappropriate median curb on this highway, indicates that the jury committed manifest error in apportioning 90% fault to DOTD and only 10% fault to Ms. Berniard. Using the substantial factor test set forth in Graves,, supra, this accident “would more probably than not have happened ‘but for’” the negligence of Ms. Berniard in driving erratically and DOTD’s negligence in placing an inappropriate median curb on this highway. The evidence indicates that the actions of both parties contributed substantially to this accident. Accordingly, we amend the trial court’s apportionment of fault, and render judgment assessing 50% fault to Ms. Bern-iard and 50% fault to DOTD.
General Damages Awards
DOTD alleges that the jury abused its discretion in awarding $5,000,000 in general damages for past, present and future physical and mental pain and suffering and $1,000,000 for past, present and future loss of enjoyment of life. It argues that, while Plaintiff is a very sympathetic party, the award is unsubstantiated by the evidence, is a flagrant abuse of jury discretion, and shocks the conscience. As such, DOTD contends there was no basis in fact or legal precedent for the jury’s award, and the award should be reduced to an amount proportionate to the injury sustained by Plaintiff.
117PIaintiff contends the general damages award is reasonably supported by the evidence and the circumstances of this case, and there has been no manifest error presented as a basis to disturb the award.
La. C.C. art. 2324.1 provides that much discretion is left to the judge or jury in the assessment of damages. The initial inquiry, in reviewing an award of general damages,' is whether the trier of fact abused its discretion in assessing the amount of damages. Cone v. National Emergency Serv. Inc., 99-0934 (La. 10/29/99), 747 So.2d 1085, 1089; Ford v. *708 Bituminous Ins. Co., 12-1453 (La. App. 3 Cir. 06/19/13), 115 So.3d 1253, 1255.
In Duncan v. Kansas City Southern Railway Co., 00-66 (La. 10/30/00), 773 So.2d 670, 682, cert. denied, 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001), the Louisiana Supreme Court explained that general damages are those which may not be fixed with “pecuniary exactitude;” rather, these damages “involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms.” (quoting Keeth v. Dept. of Pub. Safety & Transp., 618 So.2d 1154, 1160 (La. App. 2 Cir.1993).
The. primary objective of general damages is to restore the party.in as near a fashion as possible to the state he was in at the time immediately preceding injury. Daigle v. U.S. Fidelity and Guar. Ins. Co., 94-0304 (La. App. 1 Cir. 05/05/95), 655 So.2d 431, 437. The severity and duration of pain and suffering are factors to be considered in assessing quantum of damages for pain and suffering. Thibodeaux v. USAA Cas. Ins. Co., 93-2238 (La. App, 1 Cir. 11/10/94), 647 So.2d 351, 357, Before a trial court award may be set aside as inadequate or excessive by an appellate court, the reviewing court must look first, not to prior awards, but to individual circumstances of the instant matter before it Abadie v. Metro. Life Ins. Co., 00-344 (La. App. 5 Cir. 03/28/01), 784 So.2d 46, 105-106. Only after an analysis of the facts and circumstances peculiar to the instant case can a reviewing court determine the award is either excessive or inadequate. Id. The reviewing court may not merely look at past awards for similar injuries in the determination of whether the trier of fact abused its much discretion. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Rather, only after a determination that the trier of fact has abused its “much discretion” is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point which is reasonably within that- discretion. Coco v. Winston Indus., Inc., 341 So.2d 332, 335 (La. 1976).
A thorough review of the entire record in this case indicates that -the jury was manifestly erroneous in its damage award. On the date of the accident, December 28, 2009, Mr, Harris was sixty-one years old. He was five feet' eleven inches ■ tall, weighed 261 pounds, and suffered' from hypertension and diabetes. Mr. Harris- sustained a fracture- of his left femur as well as an open fracture of his left foot and. ankle. He was-initially treated at St. Elizabeth Hospital. On December 29, 2009, he underwent a surgical procedure to insert a rod into the femur and external hardware to treat the fracture of his foot and ankle. Following surgery Mr. Harris developed pneumonia. On January 6, 2010, he was taken to surgery a second time for revision of the implants and hardware. Mr. Harris was discharged on January 6, 2010, and transferred to .a rehabilitation hospital. While in the rehabilitation hospital, Mr. Harris developed an infection in his left foot and ankle. On January 21, 2010, he sought treatment from a physician at Tulane University Medical Center Clinic for treatment of this infection. On January 25, 2010, he was admitted to Tulane University Hospital and taken to surgery for. de-bridement of the infected tissue. Following surgery, he was administered intravenous antibiotics. However, the infection progressed and on January 27, 2010, Mr. Har-i"is underwent a below [ 1flthe knee amputation of his left leg. He was discharged from Tulane on January 30,2010.
The medical records indicate that Mr. Harris followed up with his Tulane physicians throughout February and March of *709 2010. The clinic notes indicate that a prosthesis was ordered on April 27, 2010. Mr. Harris returned to Tulane on June 1, 2010. The progress notes indicate that his femur had completely healed. The notes state that the stump from his amputation was looking “excellent” and the “new prosthesis he has looks wonderful.” Mr. Harris was ambulating with a walker. Mr. Harris returned to Tulane on July 21, 2010, where it was noted that his stump was “well 'healed” and he had “a. very nice below-knee prosthesis.” He had full extension of his knee. The last clinic note from Tulane is dated January 18, .2011. This note states that the prosthesis was too long and it was recommended that the prosthesis be shortened. His stump was described as being “excellent.” He had no complaints regarding his left thigh.
Review of the clinic records from Bayou Orthotic and Prosthetic Center indicates that Mr. Harris returned to the center on numerous occasions for revisions and adjustments to his prosthesis. At trial, Mr. Harris’ treating prosthetist, Dwayne Mara, was accepted by the court as an expert in the field of prosthetics. Mr. Mara testified that due to changes in the residual limb, Mr. Harris had to have his prosthesis changed. At the time of trial, Mr. Mara was in . the process of fabricating the fifth or sixth prosthesis for Mr. Harris. He estimated that Mr. Harris will need four more prosthetic devices over the remainder of his lifetime.
Mr. Harris testified that after the accident, he was pinned in the car and was in and out of consciousness. He recalled that his foot “was hanging by skin” and bones were “sticking out.” At the time of the accident, he was physically active and was working as a lead operator at Valero, St. Charles Refinery. Due to the physical activity required in this position, he was no longer able to work at that job | anafter the accident. Prior to the accident, he had planned to remain in this position as long as he could. In addition to working at the refinery, Mr. Harris built bird houses. After the accident, he was no longer able to build bird houses. However, after the accident Mr. Harris was able to continue his job preaching at the church that he and his wife started. ‘
Our review of the evidence presented at trial indicates that the jury erred in awarding a total of $6,000,000 in general damages to Mr. Harris. Although the injury from the accident, which resulted in the loss of Mr. Harris’ leg below the knee was certainly a serious injury and it caused a great deal of physical and emotional pain and suffering, the evidence indicates that Mr. Harris is still able to engage in meaningful activity. He is able to preach at church and is able to travel. Mr. Harris has difficulty in wearing the prosthetic leg, however, his treating prosthetist noted that Mr. Harris is still an active man.
An award of $350,000.00 for physical and mental pain and suffering, loss of enjoyment of life, and scarring and disfigurement that resulted from the plaintiffs loss of his right lower leg and a portion of his left foot was affirmed in Blocker v. Rapides Reg’l Med. Ctr., 03-745 (La. App. 3 Cir. 12/23/03), 862 So.2d 1220, 1222 writ denied, 04-215 (La. 03/26/04), 871 So.2d 351. In Pickering v. Paraguya, 07-1581 (La. App. 3 Cir. 04/15/09), 9 So.3d 320, 330, plaintiff was awarded $500,000.00 for the loss of his leg due to defendant’s negligence in treating his diabetic foot ulcer. This Court affirmed a jury award of $937,500.00 for pain, suffering, emotional distress, and mental anguish to a plaintiff in his mid-40s who suffered the loss of his leg below the knee. Johnson v. Lee, 10-439 (La. App. 5 Cir. 11/23/10), 54 So.3d 704, 711.
*710 After exercising this Court’s constitutional duty to review' the record in its entirety in the instant case, and given the effect the injury had on Mr. Harris’ life, 121 we find that based on the evidence, an award of $875,000.00[4] is the highest reasonable amount a jury could have awarded for the pain and suffering endured by Mr, Harris and an award of $125,000.00 is the highest reasonable amount a jury could have awarded for the loss of enjoyment of life experienced by Mr. Harris as a result of this accident. These amounts were determined based on the evidence presented and with deference to this Court’s decision in Johnson, which involved a much younger .plaintiff. Based on the adjusted fault allocation, we amend the trial court’s award to Mr. Harris for pain and suffering to $437,500.00 and amend the award for loss of enjoyment of life to $62,500.00. In rendering judgment set forth below in favor of plaintiff, the total amounts awarded to Mr. Harris by the jury for past medical expenses, lost wages, and fringe benefits are reduced by 50% based upon the adjusted fault allocation.
In addition, we must amend the trial court’s award for future medical expenses. The jury awarded $136,209.15 in future medical expenses.. The trial court judgment states that “all medical care and related benefits incurred subsequent to judgment to be paid from the Future Medical Care Fund as provided” in La. R.S. 39:1533.2. La. R.S. 13:5106C(3) provides that if the State is held liable for damages for personal injury, “the court shall determine” ... “whether the claimant is in need of future medical care and related benefits and the amount thereof.” The trial court judgment failed to state the amount of future medical care and failed to reduce the future medical care in proportion to DOTD’s liability. Accordingly, in compliance with La. R.S. 13:5106C(3), plaintiff is awarded future medical expenses in the amount of $68,104.58, to be paid pursuant | g2to La. R.S. 39:1533.2. See, Royer v. State, Dep’t of Transp. & Dev., 16-534 (La. App. 3 Cir. 1/11/17), 210 So.3d 910, 928.
CONCLUSION
For the foregoing reasons, it is hereby ordered, adjudged, and decreed that there be judgment, including judicial interest pursuant to La. R.S. 13:5112(0 and costs pursuant to La. R.S. 13:5112(A), in favor of plaintiff, James Harris, and against the State of Louisiana, Department of Transportation and Development as follows:
*711 GENERAL DAMAGES including past, present and future physical pain and suffering and mental anguish $437,500
LOSS OF ENJOYMENT OF LIFE $62,500 .
PAST MEDICAL EXPENSES $171,894.36
PAST LOST WAGES $322,501.50
FUTURE LOST WAGES $157,983
LOSS OF FRINGE BENEFITS $28,829
JUDGMENT AMENDED AND RENDERED

. Although the jury interrogatories refer to plaintiffs, the trial court judgment refers solely to plaintiff James Harris.

. Plaintiff settled with Progressive prior to trial of this matter.

. DOTD also assigns as error the trial court’s denial of its motion for directed verdict raised at the close of Plaintiff's case. The trial court has much discretion in determining whether a motion for directed verdict should be granted. Baudy v. Travelers Indem. Co. of Conn., 13-832 (La. App. 5 Cir. 4/9/14), 140 So.3d 125, 131. The standard of review for the appellate court is whether, viewing the evidence submitted, reasonable people could not reach a contrary result, hi After reviewing the evidence presented by Plaintiff during their casein-chief, we find that reasonable persons could have reached a contrary result as to whether DOTD had any third-party liability in the accident between Mr. Harris and Ms. Berniard. Consequently, we find the trial court did not abuse its discretion iii denying DOTD’s motion for directed verdict.

. We note that La. R.S. 13:5106(B)(1) provides that the total liability of the state for all damages for personal injury to any one person, exclusive of property damages, medical care and related benefits and loss of earnings, and loss of future earnings as provided by that Section, shall not exceed $500,000. Adjusting the amount awarded by this Court to conform to this Court’s allocation of fault results in an award that is in compliance with the statutory limit.